IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30406 |
| | ) | (Chapter 11) |
| H5 TRANSPORT, LLC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S AMENDED MOTION FOR (I) INTERIM APPROVAL OF A PRE-PETITION FACTORING AND SECURITY AGREEMENT, AS REVISED,[1] WITH TBK BANK, SSB [2] AND (II) INTERIM APPROVAL OF DEBTOR-IN-POSSESSION FINANCING AND ADEQUATE PROTECTION**

NOW COMES H5 Transport, LLC (the "**Debtor**" or "**H5 Transport**"), by and through its counsel, with the consent of TBK Bank, SSB d/b/a Triumph ("**Triumph**"), its prepetition factoring company and secured creditor, pursuant to Fed. R. Bankr. P. Rule 4001, Local Bankruptcy Rule 9013-1 and 9014-1 and all applicable rules of Court hereby requests an order granting authority to: (I) authorize the Debtor to maintain and continue to operate under a Pre-petition Factoring Agreement post-petition;[3,4] (II) continue to sell its Accounts to Triumph

---

[1] The Factoring and Security Agreement will be amended and supplemented by a Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement.

[2] Triumph is TBK Bank, SSB's factoring division, and was formerly known as Advance Business Capital LLC D/B/A Triumph Business Capital.

[3] The parties are seeking approval to enable the Debtor to seamlessly continue selling its accounts pursuant to a Factoring and Security Agreement as supplemented by a Post-Petition Chapter 11 Bankruptcy Rider ("**Rider**")(The Factoring Agreement and the Rider are hereinafter referred to collectively as, the "**Post-Petition Agreements**").

[4] The Factoring Agreement in section 21 contains a choice-of-law provision that reads "This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal substantive laws of the State of Texas without application of any choice of law doctrine." Accordingly, Texas substantive law governs the parties the Factoring Agreement, except as modified by the Post-Petition Chapter 11 Bankruptcy Rider to the Factoring Agreement.

1

post-petition and incur credit; (III) grant Triumph adequate protection in the form of replacement liens on property of the Debtor's estate, pursuant to Bankruptcy Code Sections 361, 363 and 364; (IV) modify the automatic stay; and (V) grant all such further relief as is just and proper, retroactively to the Petition Date (the "**Motion**") and in support thereof, respectfully represents:[5]

## BACKGROUND

1.  This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

2.  On September 16, 2025 (the "**Petition Date**"), the Debtor filed its Chapter 11 bankruptcy case.

3.  The Debtor is a Florida limited liability company that operates under U.S. DOT number 3162812 and MC-112412 that provides surface freight motor carrier transportation services for shippers and brokers in the freight transportation industry.

4.  The Debtor remains in possession of its assets and continues to operate and manage its business as a "Debtor-in-Possession" under §§ 1183 and 1184 of the Code.

5.  Triumph is in the business of providing accounts receivables financing solutions and other forms of commercial financing for businesses, including, businesses that

---

[5] All terms capitalized in this Motion that are not defined herein are to have the meanings ascribed to such terms in the Factoring Agreement and/or the proposed Interim Order and if not defined therein the Uniform Commercial Code.

provide surface freight transportation services, including freight brokers and independent motor carriers.

    a. <u>The Parties Prepetition Factoring Relationship</u>.

6.    On or about June 16, 2021, Triumph, as purchaser, and H5 Transport, as seller, entered into a Factoring and Security Agreement and that Scheduled A – Pricing and Terms[6] (as amended from time-to-time, the "**Factoring Agreement**") which entitled Triumph to, among other things, purchase H5 Transport's Accounts[7] arising from H5 Transport's performance of motor carrier surface freight transportation services provided to its customers, including shippers and brokers. A true and correct copy of the Factoring Agreement is attached hereto as <u>Exhibit A</u>, (except for any redactions made to avoid the disclosure of any propriety information).

7.    The Debtor's factoring relationship with Triumph commenced on or about October 2018 and the Debtor and Triumph operated under the Factoring Agreement prior to the Petition Date.

---

[6] The Factoring Agreement serves as both a sale of the Debtor's accounts, in respect to those accounts for which Purchase Price advances are made by Triumph, and in addition, a security agreement to provide collateral securing the Debtor's monetary and non-monetary obligations and duties of performance which are, likewise, intended to be secured by the assets that serve as Triumph's collateral.  Due to this relationship, both the Bankruptcy Code and Rules involving the sale of accounts as addressed by 11 U.S.C. § 363 and post-petition financing and use of cash collateral and adequate protection  as addressed by 11 U.S.C. § 364 and 363(c) are applicable.

[7] As noted in footnote 2, the term "Accounts" as defined by the Uniform Commercial Code ("UCC"), as enacted in Texas means "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; for services rendered or to be rendered…" Tex. Bus. Comm. Code § 9.102(2).

8.  As of the Petition Date, the Debtor's monetary obligations owed to Triumph under the Factoring Agreement were in the aggregate amount of $39,710.43, which amount excludes certain fees and costs of whatever kind or nature, including attorney's fees that Triumph is entitled to recover, in accordance with the Factoring Agreement and Section 506(b) of the Bankruptcy Code.

9.  Pursuant to the Factoring Agreement, in exchange for purchasing all of the Debtor's rights, title and interest in and to the Accounts purchased from the Debtor by Triumph after the entry of the proposed Interim Order ("**Purchased Accounts**"), Triumph agrees to pay a "Purchase Price[8]" to the Debtor ("**Advances**").  *See* Factoring Agreement § 3.

10. Pursuant to Section 9 of the Factoring Agreement, the Debtor makes certain representations, warranties and covenants in respect to the Purchased Accounts it offers for sale to Triumph, including, among others, that the Debtor has undisputed title and is the sole owner of each Purchased Accounts offered for sale and sold to Triumph free and clear of any liens, security interests or encumbrances by any person but for Triumph, each Purchased Account represents a bona fide existing obligation and is unconditionally owed and will be timely paid to Triumph in full by an Account Debtor without any defense, dispute, offer, or counterclaim, and each Account shall represent the Debtor's bona fide complete rendition of services in the ordinary course of the Debtor's business.

---

[8] Pursuant to the Factoring Agreement the term "purchase price" means the "Face Amount of a Purchased Account less the Factoring Fee." *See* Factoring Agreement § 2.29.

4

11. In addition to having received an ownership interest in the Purchased Accounts Triumph purchases, Triumph was and is also being granted a first priority security interest in various assets of the Debtor, defined in the Factoring Agreement as "Collateral," which Collateral serves to secure the Debtor's "Obligations,[9]" and which Collateral (the "**Collateral**"), includes, but is not limited to:

> All assets now owned and hereafter acquired including Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles.

*See* Factoring Agreement §§ 2.6 and 8.

12. As permitted by the Factoring Agreement, Triumph duly perfected its first priority ownership interest in all of the Purchased Accounts, as well as its first priority security interest in the Collateral, including non-Purchased Accounts (Purchased Accounts and non-purchased accounts are hereafter collectively, "**Accounts**"), by filing a UCC-1 Financing Statement with the Florida Secretary of State Secured Transaction Registry[10] on October 29,

---

[9] Pursuant to the Factoring Agreement the term "Obligations" means "all present and future monetary indebtedness, liabilities and obligations owing by Client to Triumph, whether or not arising hereunder and whether arising before, during or after the commencement of any Bankruptcy Case in which Client is a Debtor or Debtor-In-Possession." *See* Factoring Agreement § 2.24.

[10] In Texas's enactment of the UCC, Tex. Bus. Comm. Code § 9.301 provides that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." Since the Debtor is a "registered organization" that was organized under the laws of the State of Florida, the Debtor, for the purpose of perfection, is deemed "located" in Florida and the local law of Florida governs the method of perfection. Florida's enactment of UCC 9-501, reads, in relevant part, "(a) *Filing offices.* Except as otherwise provided in subsection (2), the office in which to file a financing statement to perfect the security interest …is…(1)(a) The office of the clerk of the circuit court, if: 1. The collateral is as-extracted collateral or timber to be cut; or 2. The collateral is goods that are or are to become fixtures and the financing statement is filed as a fixture filing. (b) The Florida Secured Transaction Registry, …in all other cases." Fla. Stat. Ann. § 679.5011.

5

2018, which was assigned File No. 201806894619, the effectiveness of the initial UCC-1 financing statement was continued by that UCC Financing Statement Amendment filed on or about August 8, 2023 assigned File No. 202302174364 (the "**Triumph Financing Statement**"). A true and correct copy of the Triumph Financing Statement is attached hereto as **Exhibit B**.[11] The Triumph Financing Statement provides that it covers the following collateral and reads as follows:

> All now existing and future Accounts of the Debtor/Seller that are purchased by Purchaser/Secured Party, and, **All assets of the Debtor,** including, but not limited to, all now existing and future Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, General Intangibles, Supporting Obligations and any sums maintained by Purchaser that are identified as payable to Seller from the Reserve Account.
>
> NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR/SELLER AND SECURED PARTY/PURCHASER, DEBTOR HAS AGREED NOT TO SELL ANY OF ITS ACCOUNTS TO ANY OTHER PARTY OR ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER SALE OR ENCUMBRANCE OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHTS.

(bolding added) *See* **Exhibit B**.

---

[11] Fla. Stat. § 679.5041 reads "A financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) A description of the collateral pursuant to s. 679.1081; or (2) An indication that the financing statement covers all assets or all personal property." The Official Comments to the UCC § 9.504 expressly authorizes the practice of providing a collateral description in a UCC financing statement that covers "all assets or all personal property."

6

    b. **Other Entities that may Claim an Interest in Cash Collateral, but are Junior in Priority and Interest to Triumph's Rights in the Cash Collateral.**

13. As detailed above, Triumph, holds a duly perfected and unavoidable first and senior priority ownership interest in the Purchased Accounts as well as a duly perfected and unavoidable first priority security interest in the Collateral, including all non-Purchased Accounts, and including all Proceeds of such assets, and as a result, Triumph has rights in cash collateral and is entitled to receive adequate protection due to the Debtor's use of cash collateral, as the first priority secured creditor.

14. One or more of the following parties that have filed a UCC Financing Statement naming the Debtor may claim an interest in cash collateral, junior in priority to Triumph's perfected security interest in such assets:

- On or about November 8, 2018, Starion Bank filed a UCC-1 Financing Statement against the Debtor bearing filing number 201806979525, which financing statement described the collateral to include accounts.

- On or about December 31, 2024, the U.S. Small Business Administration filed a UCC-1 Financing Statement against the Debtor bearing filing number 202403413273, which financing statement described the collateral to include accounts.

15. The Debtor does not believe that any party other than those described above duly filed a financing statement with the Florida Secretary of State thereby having obtained a perfected security interest in cash collateral.

7

c. Material Provisions of the Proposed Factoring Agreement and the Parties Stipulation of Facts.

16. As provided for in Bankruptcy Rules 4001(b)(1)(B), (c)(1)(B), and (d)(1)(B), the Debtor has granted Triumph certain additional rights, as provided in the Factoring Agreement and that Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement ("**Rider**"), a true and correct copy is attached hereto as **Exhibit D**[12] (the Factoring Agreement as supplemented and amended by the Rider shall be referred to hereinafter collectively as, the "**Post-Petition Agreements**") and the proposed Interim Order (and any final order approving the Interim Order on a final basis) ("**Interim Order**") annexed hereto as **Exhibit C**.

17. Triumph and the Debtor stipulate to the following material provisions and disclosures as summarized below:

Bankruptcy Rules 4001(b)(1)(B), 4001(c)(1)(B) Disclosures

(i) A ten-week budget prepared by the Debtor, and approved by Triumph, setting forth the projected cash flow of the Debtor for the period beginning September 21, 2025, through and until September 30, 2025, is attached hereto as **Exhibit E** (the "**Budget**").

(ii) The only cash collateral that the Debtor will be authorized to use are the Purchase Price Advances paid to the Debtor by Triumph and proceeds received in respect to any non-factored Accounts subject to the terms of the proposed Interim Order (and any final order), and the use shall be for working capital to satisfy the Debtor's ordinary course of business operating expenses in accordance with the Budget and the Interim Order (and any final Order approving this Motion).

---

[12] The Rider may or may not have been signed by the Debtor and Triumph prior to the filing of this Motion.

8

(iii) The material terms, including duration, of the use of the cash collateral and the location within the Post-Petition Agreements of all material provisions of the proposed post-petition factoring relationship between Triumph and the Debtor, including the amount of the factoring facility and the Factoring Fees the nature and extent of each provision is listed below:

    a. The Post-Petition Agreements between the Debtor and Triumph are attached hereto as **Exhibit A** and **Exhibit D**. The following is a summary of certain essential terms of the Factoring Agreement:

        i. Pursuant to the Debtor's pro forma Budget, from the date of the preliminary hearing until the final hearing the Debtor contemplates that the Debtor will offer to sell Accounts to Triumph for which Triumph will advance an up to the maximum amount of $24,196.00 from the date of the entry of this Order through October 2, 2025; however, Triumph shall have sole and exclusive discretion whether and which Accounts it may purchase from the Debtor, and to make Purchase Price Advances or over-advances in excess of the amounts contained in the Debtor's pro forma Budget, without any adverse or prejudicial consequences to Triumph's rights under the Factoring Agreement.

        ii. Pursuant to the Factoring Agreement, Triumph may buy Accounts from the Debtor by payment of the Purchase Price at a discount from the face value of each Account as set forth in Section 3 of the Factoring Agreement. Triumph shall make a Purchase Price advance to the Debtor up to the Face Amount of the invoice less the Factoring Fees, less any other amounts due to Triumph from Debtor, including, without limitation, any fees, expenses, and any Reserves as required under the Factoring Agreement.

        iii. Pursuant to Section 3 of the Factoring Agreement, Triumph is entitled to charge a Factoring Fee in connection with the Purchased Accounts that Triumph purchases from the Debtor the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account, for each Factoring Fee period or portion thereof, that any portion thereof remains unpaid as provided in Schedule A.

(iv) The Debtor stipulates that in respect to any Purchased Accounts (*i.e.*, accounts for which Triumph purchased from the Debtor, its rights, title, and interest) Triumph is assigned the exclusive right to receive payment from any Account Debtor, and

9

        any such Purchased Accounts does not constitute or qualify as cash collateral, and the estate has no interest in any Purchased Accounts.

(v)     Triumph is the Debtor's first and senior priority prepetition secured creditor due to the Debtor having granted Triumph a first priority perfected security interest in, *inter alia*, all Accounts and Proceeds of Accounts and other personal property as listed in paragraph 11 above (*i.e.*, the Collateral) which make up the Debtor's cash collateral. Triumph holds a prepetition secured claim against the Debtor in the amount of $39,710.43 plus any prepetition and/or post-petition fees, charges, costs, and expenses, including attorney's fees, as permitted by the Factoring Agreement.

(vi)     Pursuant to 11 U.S.C. § 364(c)(1) and (d), the Debtor has agreed to grant Triumph an unavoidable, duly perfected first priority ownership interest in all Purchased Accounts purchased by Triumph, post-petition, and a first priority senior perfected security interest and liens in all of the Debtor's assets acquired or arising on or after the commencement of the Bankruptcy Case, as described in the Factoring Agreement, which includes all of the Debtor's Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles, together with Cash Collateral (collectively, "**DIP Collateral**") to secure all monetary obligations arising under the Post-Petition Agreements in exchange for Triumph agreeing to make post-petition Purchase Price Advances to the Debtor as of and after the Petition Date. *See Interim Order* Section 7.

(vii)     As adequate protection to secure Triumph's prepetition senior secured Claim and only to the extent that due to the use of any Cash Collateral by the Debtor, Triumph suffers a decrease in the value of Triumph's interest in the Debtor's prepetition Cash Collateral, Triumph is granted a first priority security interest and liens in the DIP Collateral. *See Interim Order* Section 8.

(viii)     To the extent any other prepetition creditor of the Debtor may hold a valid, enforceable, unavoidable, perfected prepetition claim secured by Triumph's Collateral, as adequate protection each such secured party shall receive a post-petition replacement lien on the Debtor's post-petition assets, junior in priority to the liens and security interested granted to Triumph, and only to: (a) the same extent, validity and priority as existed pre-petition and (b) the extent that the Debtor's use of any prepetition assets, on a post-petition basis results in a decrease in the value of such entity's interest in the prepetition Collateral. *See Interim Order* Section 8.

(ix)     Upon the Occurrence of an Event of Default, Triumph shall have the right (in addition to all of its other rights under the Post-Petition Agreements) to seek on an expedited basis further order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Code authorizing Triumph to pursue any and all rights as described herein and directing Debtor (or any superseding Trustee) to immediately surrender and deliver peaceful possession of all the DIP Collateral to Triumph. *See Interim Order* Section 13.

(x)     Unless Triumph shall have given its prior written consent, or unless and until the Debtor indefeasibly pays all Pre-Petition Obligations and Post-Petition Obligations and fully satisfies all non-monetary obligations arising under the Factoring Agreement, there shall not, at any time, be entered in this case any further order that authorizes: (i) Debtor's use of Cash Collateral in violation of the provisions of this Interim Order, (ii) the use, sale or lease, other than in the ordinary course of business, of any property of Debtor in which Triumph has any interest, (iii) the Debtor to obtain credit or incur any indebtedness that is (A) secured by a security interest or lien in property that constitutes part of Triumph's DIP Collateral (as defined in the proposed Interim Order) or (B) entitled to a priority administrative status which is equal or senior to that granted to Triumph herein, or (iv) the enforcement by any creditor of a claim, the effect of which will authorize the seizure or application of any of the Purchased Accounts and/or DIP Collateral or proceeds thereof to be applied to such creditor's obligations. *See Interim Order* Section 14.

(xi)     Pursuant to the Bankruptcy Rider, the Debtor waives certain claims including any avoidance actions against Triumph, albeit the Debtor does not believe any such claims exist. *See* Bankruptcy Rider § 4.

(xii)     A waiver of any rights the estate may have under 11 U.S.C. § 506(c) – *See* Bankruptcy Rider § 4.

## RELIEF REQUESTED

The relief sought pursuant to this Motion consists of both a sale of the Debtor's Accounts, the use of cash collateral, as well as obtaining first priority secured credit. Accordingly, both 11 U.S.C. §§ 363 and 364, and any applicable rules of procedure, are applicable to this Motion.

11

First, as to the sale of accounts component of the Post-Petition Agreements, the Debtor has the right to enter in the Post-Petition Agreements in order to sell its Accounts to Triumph pursuant to Bankruptcy Code § 363(b)(1), which states that "[t]he trustee, after notice and a hearing, may…sell…other than in the ordinary course of business, property of the estate." Pursuant to Bankruptcy Code Section 1107 and 1108, the Debtor, as a debtor-in-possession "[s]ubject to such limitations or conditions as the court may prescribe, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all functions and duties, except the duties specified in sections 1106 (2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

Moreover, Bankruptcy Code § 363 states, in relevant part, that:

**(b)(1)** The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…

\*   \*   \*

**(c)(2)** The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

**(A)** each entity that has an interest in such cash collateral consents; or
**(B)** the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

**(3)** Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

\*   \*   \*

12

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

Second, as to the post-petition financing component of the Post-Petition Agreements, the Debtor has the right to incur credit from Triumph pursuant to Bankruptcy Code § 364, which permits bankruptcy courts to grant creditors senior lien rights in the Debtor's prepetition and post-petition assets in exchange for extending necessary post-petition credit. *See In re Barbara K. Enterprises, Inc.*, No. 08-11474 (MG), 2008 WL 2439649, at *10 (Bankr. S.D.N.Y. 2008)("To obtain credit…a debtor must prove that (1) the debtor cannot obtain credit unencumbered by super-priority status; (2) the credit transaction is necessary to preserve assets of the estate; and (3) the terms of the agreement are fair, reasonable, and adequate."). Bankruptcy Code § 364 states in pertinent part that:

(c) If the trustee [or Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of

13

credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee [or Debtor] is unable to obtain such credit otherwise; and
(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

"To support a financing request, a debtor should provide evidence of a potential benefit for the estate in obtaining the financing." *In re Barbara K. Enterprises, Inc.*, 2008 WL 2439649, at *14.

Any prepetition creditor that claims to hold a perfected security interest in the Debtor's prepetition cash collateral will be adequately protected by such prepetition secured creditor receiving as adequate protection pursuant to sections 361, 363(c) and 363(e), replacement liens (collectively, the "**Adequate Protection Liens**") on all DIP Collateral, subject to, and subordinate in all respects to the first and senior priority liens and security interests granted to Triumph. The Adequate Protection Liens adequately protect the prepetition secured creditor's interest in the Debtor's prepetition cash collateral by preserving any interests in the prepetition Cash Collateral to the extent of any diminution in the value of such interests, as a result of the use of Cash Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. Upon satisfaction of any prepetition secured creditor's secured claim, the Adequate Protection Liens granted to such prepetition lender herein shall automatically cease to exist.

The Debtor's ability to continue its operations by receiving working capital from Triumph in the form of Purchase Price advances is necessary to avoid immediate and

irreparable harm to the estate. The Debtor believes that it is essential that the Debtor be permitted to sell its Accounts to Triumph in order to continue its operations with the good faith expectation that it will achieve a successful reorganization. The Debtor is in the business of providing surface freight motor carrier transportation services to its customers, and without steady access to working capital the Debtor will be unable to meet its payroll obligation, fund continuing operations, pay for fuel, equipment finance charges, and other accessorial charges, maintain its drivers, personnel and other relationships or otherwise finally sustain its operations. The Debtor has evaluated its short-term financing and cash flow requirements and has reason to believe that the Budget, attached hereto as **Exhibit "E,"** properly depicts the amounts required for operations will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the financing or the budget.

      The Debtor has a reasonable and good faith belief that it is capable of successfully reorganizing. The Debtor's primary concern is to ensure that its business continues to move ahead as smoothly as possible during this bankruptcy case. The Debtor's ability to obtain post-petition factoring facilities from Triumph will allow the Debtor to continue operating so that it can continue with this reorganization process and propose a plan to satisfy the requirements of chapter 11. The Debtor's ability to convert its transportation services into accounts and exchange the accounts for immediate working capital, is a critical need and key to the Debtor's success going forward. The Debtor believes that if the benefits of the Post-Petition Agreements are not immediately made available to the Debtor, the Debtor's operations are likely to either

15

Case 25-30409 Doc 30 Filed 09/24/25 Entered 09/24/25 17:21:51 Desc Main
Document Page 16 of 18


be materially impaired, if not so disrupted so as to cause or force a liquidation or dismissal of the case resulting in: (1) the termination of engagement of over four independent contractors, (2) a severe diminution in the value of property of the estate, and (3) the loss of any ability to provide a potential dividend distribution to creditors. The Debtor does not believe that it can obtain unsecured credit, in any form, including, as an administrative expense with priority over all administrative expenses pursuant to Bankruptcy Code Section 364(a), (b) or (c)(1). Furthermore, the Debtor does not believe that it can obtain, in any form, secured credit pursuant to Bankruptcy Code Section 364(c)(2) or (3) secured by a lien on property of the estate that is not otherwise subject to a lien, or secured by a junior lien on property of the estate that is subject to a lien.

The Debtor's sales of Accounts to Triumph under the Factoring Agreement is a good faith arms-length transaction, and the Debtor and Triumph jointly seek the protections afforded pursuant to 11 U.S.C. § 363(m) and 11 U.S.C. § 364(e) so that the post-petition financing may be made available promptly without having to delay the sale of accounts until the time expires to prevent exposure. In the event of any reversal or modification on appeal of the attached proposed Interim Order, no such order shall affect the validity of any debt incurred, or any priority or lien so granted to Triumph, and the Court is requested to find that the extension of credit, the sales of accounts and the factoring facilities offered, and specifically the Post-Petition Agreements, are being provided in good faith.

The Debtor proposes to use the Purchase Price Advances from the sale of Accounts by Debtor to Triumph only for ordinary and necessary limited operating expenses in connection

with the ordinary operation of the Debtor's business substantially in accordance with the operating Budget annexed hereto as **Exhibit "E".** The Debtor believes that the Budget includes all reasonable, necessary and reasonably foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for the period set forth in the Budget. The Debtor believes that the use of the Purchase Price Advances the Debtor receives from Triumph in exchange for selling Accounts to Triumph in accordance with the Post-Petition Agreements will provide the Debtor with adequate liquidity to pay ordinary course payable administrative expenses as they become due and payable during the period covered by the Budget without any significant diminution in value of the Collateral.

**WHEREFORE,** the Debtor respectfully requests entry of: (a) the proposed the Interim Order, in the form attached hereto granting the relief sought in this Motion Retroactively to be effective as of the Petition Date, and (b) for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 24, 2025   By:   /s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 970-2770
christianna@dakotabankruptcy.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of September 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Christianna A. Cathcart
Christianna A. Cathcart