IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>H5 TRANSPORT, LLC,<br><br>                         Debtor. | Chapter 11<br><br>Case No. 25-30409 |

**FINAL ORDER APPROVING DEBTOR'S EMERGENCY MOTION FOR (I) INTERIM (AND FINAL) APPROVAL OF A PRE-PETITION FACTORING AND SECURITY AGREEMENT, AS REVISED,[1] WITH TBK BANK, SSB [2] AND (II) INTERIM (AND FINAL) APPROVAL OF DEBTOR-IN-POSSESSION FINANCING AND ADEQUATE PROTECTION**

THIS MATTER has come before the Court upon the request of H5 Transport, LLC, the Debtor (the "**Debtor**"), with the joinder and consent of TBK Bank, SSB d/b/a Triumph ("**Triumph**"), its prepetition factor and secured creditor, and proposed post-petition factor, by way of Debtor's Emergency Motion for (I) Interim (and Final) Approval of a Pre-Petition Factoring and Security Agreement, as Revised, with TBK Bank, SSB and (II) Interim (and Final) Approval of Debtor-in-Possession Financing and Adequate Protection (the "**Motion**"). The Motion is made pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 4001, 6004 and 9014.

On October 2, 2025, the Court conducted a preliminary hearing on the Debtor's

---

[1] The Factoring and Security Agreement will be amended and supplemented by a Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement.

[2] Triumph is TBK Bank, SSB's factoring division, and was formerly known as Advance Business Capital LLC.

Motion. On October 6, 2025, the Court entered the Interim Order on Debtor's "First Day" Motions (Doc. 44) Approving Debtor's Emergency Motion. Pursuant to the Interim Order, and based upon the proffers made by counsel, and evidence presented to this Court in respect to the Motion and argument of counsel, the Motion is hereby approved on a final basis without a further hearing, in accordance with the terms of this Final Order.

The Debtor and Triumph have stipulated to the following facts in support of the Motion, which the Court adopts, subject to paragraph 20 in this final order:

(a) On or about June 16, 2021, Triumph and the Debtor entered into a Factoring and Security Agreement which entitled Triumph to, among other things, purchase the Debtor's Accounts[3] arising from the Debtor's sales of goods and/or transportation services provided to its customers (as amended, supplemented and/or restated, hereinafter, the ("**Factoring Agreement**")).

(b) The Debtor and Triumph have entered into a Post-Petition Chapter 11 Bankruptcy Rider to Factoring Agreement ("**Rider**"), which is subject to this Court's approval (the Factoring Agreement and the Rider are referred to collectively as the "**Post-Petition Agreements**").

(c) Prior to the Petition Date (*i.e.*, January 23, 2025, hereinafter referred to as, the "**Petition Date**"), in exchange for making Purchase Price payments (as defined in the Factoring Agreement) (hereinafter, "**Advances**") to the Debtor pursuant to and in accordance with the Factoring Agreement, Triumph holds a prepetition secured claim in the aggregate amount of $39,710.43 as of the Petition Date (the "**Pre-Petition Obligations**"), which amount excludes fees and costs of whatever kind or nature, including attorneys' fees that Triumph is entitled to recover in accordance with the Post-Petition Agreements.

(d) Triumph caused to be filed a UCC-1 Financing Statement with the Florida Secretary of State Secured Transaction Registry on October 29, 2018, which was assigned File No. 201806894619, the effectiveness of the initial UCC-1 financing

---

[3] Capitalized words that are not defined in this Order are defined either in the Motion, the Factoring Agreement and/or the Uniform Commercial Code.

(e)     statement was timely continued by that UCC Financing Statement Amendment filed on or about August 8, 2023, assigned File No. 202302174364.

(e)     Triumph holds an unavoidable, duly perfected first priority ownership interest in prepetition Purchased Accounts (as defined in the Factoring Agreement) and an unavoidable, duly perfected first priority security interest in the Collateral, including, but not limited to any non-Purchased Accounts that serves to secure Triumph's prepetition Secured Claim arising under the Factoring Agreement.

(f)     The Debtor's immediate need to obtain credit pursuant to the Post-Petition Agreements and use Cash Collateral is critical in order to enable the Debtor to continue operations, to minimize the disruption of the Debtor as a "going concern" and to administer and to preserve the value of its estate. The ability of the Debtor to convert its Accounts into working capital, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise finance its operations requires the availability of the factoring facilities offered by Triumph and the Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the factoring facilities.

(g)     The Debtor has moved timely to seek to have this Order approved after filing its petition seeking the relief sought in the Motion. The Court notes that the Debtor set the Motion for an emergency hearing promptly, and that good causes exist to grant the protections to Triumph contained in this Final Order retroactively to the Petition Date.

(h)     Triumph, the Debtor's prepetition factor and proposed post-petition factor, is willing to purchase the Debtor's Accounts post-petition and make Purchase Price Advances to the Debtor only upon the conditions contained in the Post-Petition Agreements and this Final Order.

(i)     The Debtor was unable to obtain unsecured credit or to incur unsecured debt as an administrative expense, or obtain unsecured credit allowable under section 503(b)(1) as an administrative expense with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code, or secured by a lien on property of the estate that is not otherwise subject to a lien; or secured by a junior lien on property of the estate that is subject to a lien.

(j)     Triumph's willingness to enter into and operate under the Post-Petition Agreements and provide factoring facilities to fund the Debtor's required

operations is conditioned upon the Debtor agreeing that the Advances made by Triumph to the Debtor shall be used, in each case, solely in a manner consistent with the terms and conditions of the Post-Petition Agreements, this Order and the Budget (defined below and as the same may be modified from time to time) solely for (1) working capital and other general corporate purposes, (2) permitted payment of costs of administration of the Case, and (3) payment of fees and expenses as approved by the Court.

(k) It is in the best interests of the Debtor's estate that Triumph be allowed to maintain its prepetition factoring relationship by entering into the Post-Petition Agreements in order to purchase the Debtor's Accounts, and for Triumph to be permitted to make Advances and other financial accommodations to the Debtor under the terms and conditions set forth herein, to prevent a deleterious impact on the Debtor's business, assets or opportunity to reorganize.

(l) Sufficient and adequate notice of the Motion, the proposed form of Final Order, and the hearing with respect thereto has been given in accordance with the Motion and pursuant to Bankruptcy Rule 4001(c) and section 102(1) of the Bankruptcy Code as required by section 364(c) and (d) of the Bankruptcy Code, and no further notice of, or hearing on, the relief sought in the Motion having been required.

(m) Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (G), (K) and (M).

(n) This Court has jurisdiction over this proceeding and the parties property affected hereby pursuant to 28 U.S.C. §§157 and 1334.

(o) Venue for this Bankruptcy Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(p) Good and sufficient cause exists for the entry of this Final Order.

(q) The purchase and sale of the Accounts and extension of credit under the Post-Petition Agreements is in good faith. Any Advances or other financial accommodations which are caused to be issued to Debtor by Triumph pursuant to the Post-Petition Agreements are deemed to have been extended in good faith, as such term is used in Sections 363(m) and 364(e) of the Code, and Triumph shall be entitled to the full protection of Sections 363(m) and 364(e) of the Code in the event that this Order or any provision hereof is vacated,

          reversed or modified, on appeal or otherwise, but only to the extent that cash collateral is used or financing provided as authorized herein.

    (r)    Granting the relief requested in the Motion, including authorizing the Debtor to use cash collateral and to obtain credit from Triumph, post-petition in accordance with the Post-Petition Agreements, is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Accordingly, the requirements under Bankruptcy Rule 4001(b)(2) and (c)(2) have been satisfied for commencing an emergency hearing on the Motion prior to 14 days after service of the Motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Motion is GRANTED in its entirety, all written objections to the Motion are denied, with prejudice, and all procedures as detailed in the Motion are hereby APPROVED, and this Final Order shall become effective immediately upon its entry and retroactive as of the Petition Date.

2. **Approval of Post-Petition Agreements.** The Debtor and Triumph are hereby immediately authorized to enter into, and continue to operate under and in accordance with, the Post-Petition Agreements and this Final Order, and shall further be entitled to execute, deliver, and perform all other documents, instruments, and agreements necessary to effectuate and carry out the terms of the Post-Petition Agreements and this Final Order, and the Post-Petition Agreements are hereby approved in all respects, *retroactively*, as of the Petition Date, pursuant to Bankruptcy Code Sections 363(b)(1), (d), (e) and (f). The Debtor is hereby authorized to sell Accounts to Triumph and Triumph is authorized, in its sole and exclusive discretion, to purchase Accounts and make Advances, over-advances, and to provide any other financial accommodations to the Debtor, after deduction by Triumph of amounts allowed

under the Post-Petition Agreements, including, but not limited to, the Required Reserve Amount. Triumph shall be the absolute owner for the Face Amount (as defined by the Factoring Agreement) of any Purchased Accounts purchased, free of any claims and interests and holder of a post-petition first priority lien and security interest in all non-Purchased Accounts that serve as Collateral in accordance with this Final Order and the Post-Petition Agreements.

3. **Modification of Automatic Stay**. Effective immediately upon the entry of this Final Order, in respect to: (i) the Debtor's existing Pre-Petition Obligations (as identified in the Stipulation (c), above), and to the extent that any of the prepetition Accounts qualify as property of the estate under 11 U.S.C. §541, and (ii) in respect to any Purchase Price Advances made on or after the Petition Date by Triumph to or for the benefit of Debtor of whatever kind or nature, as well as any other hereafter arising obligations and indebtedness owing to Triumph under the Post-Petition Agreements ("**Post-Petition Obligations**"), the Debtor consents to a modification of the automatic stay and Triumph shall be free from any restrictions and shall be entitled to collect all Accounts directly from any Account Debtor and/or other payors, regardless of whether such Accounts arise from the sale of goods and/or performance of services the Debtor has or hereafter provides to its customers before and/or after the Petition Date. Triumph shall be irrevocably and unconditionally authorized and is hereby permitted to retain and apply all payments and Proceeds of any Purchased Accounts purchased by Triumph and any non-Purchased Accounts, to the repayment of Debtor's Pre-Petition Obligations and Post-Petition Obligations in accordance with the Post-Petition Agreements. Nothing shall

prevent Triumph from seeking any additional relief prior to and at the final hearing on the Motion.

4. **Notice of Assignment of Accounts.** Pursuant to and as authorized by the Post-Petition Agreements and Section 9-406 of the Uniform Commercial Code, Triumph is expressly authorized to send and deliver to any customer of the Debtor (*i.e.*, shippers, freight brokers, or any other payor) one or more written notifications of assignment in order to notify each such Account Debtor that the Debtor has sold, assigned and/or transferred to Triumph the right to receive payment due in connection with any present and future Accounts, and all Accounts shall be payable and paid solely to Triumph as provided in such written notification of assignment. Debtor is specifically directed, as required by the Factoring Agreement, before sending any Invoice to an Account Debtor which may or will constitute a Purchased Account, to clearly state in a manner satisfactory to Triumph that payment of Debtor's Purchased Accounts and non-Purchased Accounts are assigned and are factored by and payable exclusively to Triumph.

5. **Use of Cash Collateral; Restrictions.** Except as provided below, the Debtor shall at no time during this Chapter 11 Case seek to use or be permitted to use any *Cash Collateral*, as defined under section 363 of the Bankruptcy Code, to the extent that the source of such Cash Collateral constitutes proceeds of Purchased Accounts, non-Purchased Accounts or payment intangibles ("**Restricted Cash Collateral**"). The parties agree, however, that prior to any Event of Default (as defined in section 11 of the Factoring Agreement and as supplemented by Section 8 of the Bankruptcy Rider), the following shall not constitute or qualify as

Restricted Cash Collateral: (a) Purchase Price Advances that Triumph makes to the Debtor in exchange for purchasing Purchased Accounts from the Debtor, and (b) Account Debtor payments received and collected on non-Purchased Accounts and deposited into the Reserve, which Triumph may, in discretion exercised in good faith, elect to remit to the Debtor in accordance with the Factoring Agreement, which Debtor shall be entitled to use subject to the following limitations: for use, (i) only for the purposes specifically set forth in this Final Order and the Post-Petition Agreements, and in compliance with the Budget and (ii) conditioned upon the Debtor, at all times, satisfying its duty to maintain in Reserve the Required Reserve Amount ("**Non-Restricted Cash Collateral**"). Non-Restricted Cash Collateral and shall be exclusively subject to the first and senior priority security interest and liens granted to Triumph to secure any Post-Petition Obligations. Notwithstanding the forgoing, upon the occurrence of any Event of Default (as defined in section 11 of the Factoring Agreement and as supplemented by Section 7 of the Rider), and notice of such Event of Default and the Debtor's failure to timely cure and the delivery of written evidence of such cure to Triumph within three (3) days ("**Notice and Cure Period**"), all Non-Restricted Cash Collateral shall automatically become Restricted Cash Collateral.

6. **Budget Variance.** Notwithstanding the budget attached as Exhibit E to the Motion (Docket No. 30), the Debtor is hereby authorized, without further order of the Court, to: (i) exceed the weekly fuel line item by an amount not to exceed $2,000.00 per week; and (ii) exceed any other individual line item in the approved budget by an amount not to exceed ten percent (10%) per week. Any such variance shall be disclosed in the Debtor's monthly

operating reports or provided upon request to the United States Trustee or any party in interest.

7. **Trust.** The Debtor's failure to manage and protect Triumph's interest in all Restricted Cash Collateral (*i.e.*, Purchase Price Advances) in accordance with the terms of this Order, the Budget and the Post-Petition Agreements constitute an Event of Default under the Post-Petition Agreements and this Final Order. In the event that Debtor comes into possession of any Proceeds (as that term and any other terms as used is defined by the Uniform Commercial Code) of Purchased Accounts or non-Purchased Accounts (*i.e.*, Restricted Cash Collateral), the Debtor (including any person including any insider of the Debtor, who on behalf of the Debtor, is responsible for managing and/or administering such duties of the Debtor in accordance with this Section) shall immediately notify Triumph of receipt of the payment, hold said payment in express trust for Triumph, keep separate and apart from Debtor's own property and funds, and by no later than two (2) business days following the date of receipt, deliver said payment to Triumph in the identical form in which received.

8. **Post-Petition DIP Liens Granted to Triumph.** Pursuant to the Post-Petition Agreements, and as authorized by section 364(c)(1) and (d)(1) of the Bankruptcy Code, as security for all Post-Petition Obligations, Triumph is hereby indefeasibly granted, a valid, binding, enforceable and perfected first and senior ownership interest in all Purchased Accounts as well as a first and senior priority security interest and lien in all of the following property and assets of Debtor *acquired or arising on and after* the commencement of the Bankruptcy Case: all of Debtor's assets including, but not limited to, all of the Debtor's rights,

title and interest in and to each of the following, wherever located and whether now or hereafter existing or now owed or hereafter acquired or arising: Accounts, Chattel Paper, Deposit Accounts, Goods, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, General Intangibles, unearned insurance premiums in connection with any insurance policies, and all proceeds of the foregoing, specifically excluding recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724 (collectively, the "**DIP Collateral**"). Other than as set forth herein, the security interest and liens granted to Triumph in the DIP Collateral shall not be made subject to or be made *pari passu* with or to any lien or security interest heretofore or hereinafter granted in the Case or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "**Successor Case**"). The security interest and liens granted to Triumph shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, and/or upon the dismissal of the Case or Successor Case. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the security interest and liens granted to Triumph.

9. **Adequate Protection Granted to Triumph**. As adequate protection to secure Triumph's Pre-Petition Obligations and to the extent that due to the use of any prepetition assets by the Debtor, Triumph suffers a decrease in the value of Triumph's interest in the Debtor's prepetition assets, Triumph is hereby indefeasibly granted, a valid, binding,

enforceable and perfected first and senior security interest and liens in all of Debtor's assets acquired or arising on or after the commencement of the Bankruptcy Case (including, without any limitation, DIP Collateral), including, but not limited to, Cash Collateral to the same extent, validity and priority as existed pre-petition, but specifically excluding recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724.  To the extent any other prepetition secured creditor of the Debtor, holds a valid, enforceable, unavoidable, duly perfected prepetition claim secured by any portion of the Debtor's prepetition assets, as adequate protection, each shall receive a post-petition replacement lien on the Debtor's post-petition assets subordinate to and inferior in priority to the senior replacement liens granted to Triumph in this section, but only to the same extent, validity and priority as existed pre-petition and only to the extent that the use of any prepetition assets results in a decrease in the value of such entity's interest in the prepetition assets, and in no event shall any party interfere with and/or impair, or otherwise seek to enforce any right or privilege that may in any way interfere with and/or adversely affect any of the rights, interests and claims provided to Triumph by the Debtor herein and under the Post-Petition Agreements, including, but not limited to, Triumph's exclusive rights to retain payment of all Purchased Accounts and non-Purchased Accounts.

10. **Adequate Liens Granted to Post-Petition Secured Creditors.** Pursuant to section 364(c)(1),(2), and (3) of the Bankruptcy Code, the Post-Petition Obligations shall, except for statutory fees owing to the U.S. Trustee, shall have priority in payment over any administrative expenses or charges that are or may be incurred after the filing of the Petition, including,

without limitation, expenses, charges or claims of the kind specified in sections 503(b), 506(c), and 507(a) and (b) of the Bankruptcy Code (specifically excluding recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724).

11. **Automatic Perfection of Triumph's Post-Petition Liens.** Triumph shall not be required to file in order to establish or maintain perfection and shall be automatically perfected pursuant to this Final Order, however, Triumph, but is not restricted from doing so, any UCC financing statement(s) or other document(s) with any filing authority to further perfect and/or maintain perfection of such ownership in the Purchased Accounts, or any security interest or lien granted pursuant to the Post-Petition Agreements and this Order, or take any other action in connection therewith; if Triumph, in its sole discretion, shall elect to file any UCC financing statement or other document with respect to such ownership interest in the Purchased Accounts or security interests and liens in the DIP Collateral, the Debtor shall be deemed to have authorized the filing thereof and same shall be deemed to have been perfected at the time and on the date of commencement of this Chapter 11 case, or as of the date of the filing of any previously filed financing statement, whichever is earlier.

12. **Event of Default; Relief from Stay.** Upon the occurrence of any event which would be an Event of Default under the Post-Petition Agreements (as defined in section 12 of the Factoring Agreement as supplemented by Section 8 of the Rider), and/or this Order, the Debtor's right to use any Cash Collateral, including, without limitation, Non-Restricted Cash Collateral shall automatically terminate and the Debtor's right to secure further advances from

Triumph shall immediately terminate, without any further notice. Notwithstanding, the Debtor's right to use any Cash Collateral, including, without limitation, Non-Restricted Cash Collateral Cash Collateral shall automatically terminate, and the Debtor's right to secure further advances from Triumph, shall immediately terminate, without any further notice upon the occurrence of any one or more of Event(s) of Default under the Post-Petition Agreements. In the event of the occurrence of an Event of Default, and after the Notice and Cure Period and the Debtor's failure to cure, Triumph shall have the right (in addition to all of its other rights under the Post-Petition Agreements) to seek on an expedited basis further order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Code authorizing Triumph to pursue any and all rights as described herein and directing Debtor (or any superseding Trustee) to immediately surrender and deliver peaceful possession of all the DIP Collateral to Triumph.

13. **Preservation of Triumph's Rights**. The protections afforded to Triumph under the Post-Petition Agreements and this Order, and any actions taken pursuant hereto shall survive the entry of any orders which may be subsequently entered in this case or any case to which this case may be converted and such ownership of the Purchased Accounts and security interests, liens and interests recognized or granted to Triumph under the Post-Petition Agreements and this Order shall continue in this and any superseding Chapter 7 case under the Bankruptcy Code and such ownership of the Purchased Accounts and security interests, liens, and interests shall maintain their priority as provided by this Order until all the Pre-Petition Obligations and Post-Petition Obligations have been paid and indefeasibly satisfied in

full, and the time of payment of any and all of the Post-Petition Obligations arising out of or incurred pursuant to the Post-Petition Agreements shall not be altered or impaired by any plan of reorganization, whether proposed by Debtor or any other party-in-interest. The Post-Petition Obligations of Debtor to Triumph under the Post-Petition Agreements shall not, in this Chapter 11 case, be discharged by the entry of any order confirming a plan of reorganization and, pursuant to Section 1141(d)(4) of the Code, unless prior to or concurrently with the entry of such order, Triumph is paid in full and all monetary and non-monetary obligations under the Post-Petition Agreements are fully paid and indefeasibly satisfied. A plan of reorganization in violation of the terms of this Final DIP Order shall be deemed an event of default under the Post-Petition Agreements. Nothing in this paragraph shall be construed to restrict the Debtor's exclusive right to file a plan of reorganization in accordance with 11 U.S.C. § 1189.

14. **No Authorization**. Unless Triumph shall have given its prior written consent, or unless and until the Debtor indefeasibly pays all Pre-Petition Obligations and Post-Petition Obligations and fully satisfies all non-monetary obligations arising under the Factoring Agreement, there shall not, at any time, be entered in this case any further order that authorizes: (i) Debtor's use of Cash Collateral in violation of the provisions of this Final Order, (ii) the use, sale or lease, other than in the ordinary course of business, of any property of Debtor in which Triumph has any interest, (iii) the Debtor to obtain credit or incur any indebtedness that is (A) secured by a security interest or lien in property that constitutes part of Triumph's DIP Collateral or (B) entitled to priority administrative status which is equal or

senior to that granted to Triumph herein, or (iv) the enforcement by any creditor of a claim, the effect of which will authorize the seizure or application of any of the Purchased Accounts and/or DIP Collateral or proceeds thereof to be applied to such creditor's obligations. An Event of Default shall occur if the Debtor seeks any amendment, modification or extension of this Final Order without the prior written consent of Triumph, and no such consent shall be implied by any other action, inaction or acquiescence of Triumph.

15. **Field Exam**. Triumph shall have the right, pursuant to the Post-Petition Agreements and this Final Order, on reasonable notice to Debtor, at any time during Debtor's normal business hours, to perform a site visit/field examination inspection conducted by Triumph's representatives at the Debtor's locations, at such times and in such frequencies that Triumph may elect, to review Debtor's physical premises, interview its staff or inspect Debtor's books and records and the DIP Collateral.

16. **No Waiver of Triumph's Rights**. The failure of Triumph to seek relief or otherwise exercise its rights and remedies under this Final Order, the Post-Petition Agreements, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

17. **No Third Party Beneficiary**. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, including, but not limited to, any creditor, equity holder or any direct, indirect, or incidental beneficiary.

18. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Order according to its terms.

19. **Protection of Triumph's Rights Prior to Stay**. If this Final Order or any of the provisions of this Final Order are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect (a) the validity of the Post-Petition Obligations (as defined in Section 3, above) incurred by Debtor to Triumph prior to the effective date of such modification, vacatur or stay, or (b) the validity or enforceability of any ownership interest of Triumph in any Purchased Accounts and any security interest, lien or priority authorized or created hereby or pursuant to the Post-Petition Agreements. Notwithstanding any such modification, vacatur or stay, any Post-Petition Obligations incurred by Debtor to Triumph prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the provisions of this Order, and Triumph shall be entitled to all the rights, remedies, privileges, and benefits granted herein and pursuant to the Post-Petition Agreements with respect to all such Post-Petition Obligations.

20. **Order Immediately Effective**. This Order is and shall be fully effective upon its entry. Pursuant to Bankruptcy Rule 6004(h), the terms of this Order in respect to authorizing a sale of Debtor's Accounts shall be deemed immediately effective and enforceable and not stayed until the expiration of fourteen (14) days absent (i) an application by a party in interest for such stay in conformity with Bankruptcy Rule 8007 and (ii) a hearing upon notice to Debtor and Triumph.

21. **Challenge Period**. All parties-in-interest (excluding the Debtor based on the Debtor having agreed to unconditionally waive all claims against Triumph in accordance with the Bankruptcy Rider), shall have up to and not more than sixty (60) days of the entry of this

Final Order granting the Motion to complete an investigation of the facts relating to Triumph's ownership interest in prepetition Purchased Accounts, the validity, enforceability, priority of the liens and security interest granted to Triumph in the Debtor's prepetition Collateral (as defined in the prepetition Factoring Agreement), or the amount of Obligations owing to Triumph by the Debtor, prepetition, including, but not limited to, the amount, validity and priority of Triumph's prepetition Claims against the Debtor that arose before the commencement of the Bankruptcy Case (collectively, "Objection Deadline"). If by no later than the Objection Deadline none of the categories of parties listed in the preceding sentence file a motion or commence a proceeding with the Bankruptcy Court contesting, or otherwise seeking a declaration of Triumph's ownership interest in any prepetition Purchased Accounts, the validity, enforceability, priority of the liens and security interest granted to Triumph in the prepetition Collateral, including non-Purchased Accounts, or the amount of Triumph's prepetition Claim against the Debtor that arose before the commencement of the Bankruptcy Case, then as of the Objection Deadline all parties shall be deemed to be barred, waived and/or estopped from: (a) seeking to prevent, impair avoid or otherwise invalidate Triumph's rights to retain payment of any Purchased Accounts and non-Purchased Accounts or otherwise, (b) contesting Triumph's ownership interest in any Purchased Accounts, (c) contesting the validity, enforceability, priority of the liens and security interest granted to Triumph in any Collateral, or (d) contesting the amount of Triumph's Claim against the Debtor, including, but not limited to any Obligations that arose before the commencement of the Bankruptcy Case. The express waivers of any claims against Triumph as provided in this section of the Order is

effective and fully binding upon the estate, and any party-in-interest in this case and any superseding Chapter 7 case if the chapter 11 case is converted to a case under chapter 7.

22. **Attorney's Fees.** Pursuant to Section 17 of the Factoring Agreement, and until confirmation of a plan, Triumph shall be entitled to be reimbursed all of its reasonable attorneys' fees and costs in accordance with the following procedure: Triumph, by and through its counsel, shall file with the Court a short form application summarizing the total amount of attorney's fees and costs incurred by Triumph attaching Triumph's counsel's monthly statement(s) for fees and costs (redacted as necessary to protect privileged and confidential information, including information protected by the attorney-client and/or work-product privileges). Unless a written objection (specifying the line item of the bill objected to, the reason for the objection and a proposed resolution of the objection) is filed by any party-in-interest within 21 days, Triumph shall immediately be authorized to charge the Debtor's Reserve or otherwise seek payment of such fees and costs without further order of the Court. To the extent no timely written objection is filed, any objection shall be deemed waived and no further objection may thereafter be raised in connection therewith. In the event a timely objection is filed, the parties will seek to schedule a hearing on the objection to obtain a ruling from the Court. Notwithstanding, any portion of Triumph's counsel's invoice statement(s) not objected-to shall immediately be satisfied by the Debtor in accordance with the Post-Petition Agreements. This procedure shall serve in lieu of separate applications for compensation under Rule 2016 of Tile 11 of the United States Code, unless otherwise ordered by the Court.

23. **Proof of Claim**. Triumph shall not be required to, but is not restricted from, filing a proof of Claim and/or administrative expense claim in the Case to the extent Triumph deems it necessary or appropriate to preserve its right to receive a distribution applicable to any Pre-Petition Obligations and/or Post Petition Obligations owing to Triumph under and with respect to the Post-Petition Agreements.

24. **Conflict**. If there is any conflict between this Final Order and the Post-Petition Agreements, the terms and provisions of this Final Order shall control.

25. **Miscellaneous Provisions**. Nothing contained in this Final Order shall serve to permit or authorize any Account Debtor to unilaterally modify or extend the terms of payment on Accounts or otherwise delay remitting timely payment of any Account to Triumph.

26. **Headings**. The headings in this Order are for reference only and do not affect the interpretation of this Order.

27. **Service**. The Debtor, within forty-eight (48) hours following the entry of this Final Order, shall cause copies of this order and the Motion, with all attachments, to be served on each of the Debtor's 20 largest unsecured creditors, Triumph, the United States Trustee's Office, any secured creditor that holds a security interest and/or lien in cash collateral, and all other parties who are required to be served under Fed. R. Bankr. P. 4001(d), and any other Rules, including the Local Rules of this Court.

28. **Miscellaneous.** Until confirmation of a Plan of reorganization, Section 15 of the Factoring Agreement (Exhibit A) shall be amended to read as follows:

**Indemnification**. Client agrees to indemnify Triumph against and save Triumph harmless from any and all manner of suits, claims, liabilities, demands and expenses, whether directly or indirectly, resulting from or arising out of this Agreement including the transactions or relationships contemplated hereby and the enforcement of this Agreement, and any failure by Client to perform or observe its duties under this Agreement, excluding intentional fraud or willful misconduct committed by Triumph. In no event will Triumph be liable to Client for any lost profits or any form of consequential, incidental or special damages resulting from or arising out of or in connection with this Agreement, the transactions or relationships contemplated hereby or Triumph's performance or failure to perform hereunder, even if Triumph has been advised of the possibility of such damages.