IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30409 |
| | ) | (Chapter 11) |
| H5 TRANSPORT, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OPPOSITION TO UNITED STATES TRUSTEES
MOTION TO DISMISS OR CONVERT CHAPTER 11 CASE**

Comes now H5 Transport, LLC. ("H5 Transport" or the "Debtor"), by and through undersigned proposed counsel, in opposition to the United States Trustee's Motion to Dismiss or Convert Chapter 11 Case (the "UST Motion," as found at DE #113, with the proponent thereof being known as the "UST"), and states as follows:

**I.        Introduction**

The UST's Motion rests on a narrow and mechanical reading of the Debtor's financial reports, elevating short-term fluctuations in cash flow into a claim of systemic failure while disregarding the Debtor's continued operations, liquidity, and path toward reorganization. In substance, the Motion advances two arguments: that the Debtor's recent operating reports demonstrate continuing loss, and that the Debtor's current plan cannot be performed, thereby precluding reorganization.

Those arguments do not withstand scrutiny. The Debtor's monthly operating reports, when read in context, reflect an operating business that has continued to generate revenue and maintain substantial liquidity while navigating a series of discrete, temporary disruptions—not a business in sustained decline. Nor does the Debtor's current cash position, viewed in isolation, determine its ability to reorganize. For these reasons, and as set forth more fully below, the Motion should be denied.

1

## II.      Standard

The Bankruptcy Code provides that matters under chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4).

"The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582-83 (Bankr. S.D.N.Y.2009)).

Once a creditor has filed a motion seeking conversion or dismissal, and has then proceeded to establish cause (whether an enumerated or unenumerated ground), the burden shifts to the debtor:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate, and the debtor or any other party in interest establishes that—(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in section 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

## III.      Argument: the UST Has Not Established Cause to Convert

### a.   There is no substantial or continuing loss or diminution

In the Motion, the UST contends that the Debtor's monthly operating reports establish a substantial or continuing loss to or diminution of the estate under Section 1112(b)(4)(A). That

2

contention rests on a mechanical reading of several months of negative cash flow and the annualization of atypical results. Read as a whole, however, the monthly operating reports do not depict a debtor that has ceased operations, lacks revenue, or is merely dissipating assets while awaiting inevitable liquidation. They depict a small trucking company that has continued to operate and generate meaningful receipts while maintaining substantial liquidity despite several discrete operational disruptions over a relatively short period—not a business in sustained decline.

First, the UST has not established a continuing loss. Negative cash flow may, in some circumstances, support a finding of continuing loss or diminution of the estate, particularly where the debtor has ceased operations and is effectively liquidating. *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 515–16 (8th Cir. 2004). In that setting, "any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of creditors." *Id.* at 516. But courts do not apply that principle mechanically. Whether negative cash flow reflects a continuing loss depends on context, including whether the debtor remains operational and whether the reported losses reflect actual, ongoing deterioration in the estate's financial condition. *See In re Neosho Concrete Prods. Co.*, 2021 Bankr. LEXIS 1198, at *11–13 (Bankr. W.D. Mo. May 6, 2021); In re Econ. Cab & Tool Co.*, 44 B.R. 721, 724–25 (Bankr. D. Minn. 1984).

Here, October reflected positive net cash flow of $2,225.67 and an ending cash balance of $155,199.05. Although November through February reflected negative cash flow, the Debtor still generated meaningful receipts of $38,383.39 in November, $57,340.46 in December, $50,720.45 in January, and $49,342.91 in February, while maintaining more than $121,000 in cash on hand at the end of that period. These figures reflect an operating business experiencing temporary disruption—not one in continuing decline.

Nor were the negative months unexplained or indicative of ongoing deterioration. December included increased bankruptcy related professional expenses. January included a one-time repair expense of $7,571.49 and reduced revenue caused by an employee hospitalization. February reflected the unexpected death of a driver, which caused temporary operational disruption, retrieval costs, and increased insurance expense. These were isolated events, not evidence of a failing business. The UST's reliance on annualized projections ignores that reality. By extrapolating from atypical months, the Motion assumes that extraordinary disruptions will recur as a matter of course. The record does not support that assumption. Instead, it reflects isolated setbacks, not a sustained pattern of decline. When those anomalies are accounted for, the Debtor's financial performance does not show the sort of sustained downward trajectory required to establish a continuing loss.

Second, the UST has not demonstrated that any diminution was substantial. Section 1112(b)(4)(A) requires more than a few months of negative cash flow; it demands proof that the estate's value has experienced a material and economically significant erosion. *See In re Neosho Concrete Prods. Co.*, 2021 Bankr. LEXIS 1198, at *11–12 (quoting 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (16th ed.)); *In re Keener*, 2017 Bankr. LEXIS 3798, at *13–14 (Bankr. N.D. Iowa Nov. 2, 2017). The Motion fails to provide such evidence. As discussed above, the MORs reflect an operating business that continued to generate revenue and preserve liquidity notwithstanding several unusual disruptions. The Motion identifies no assets being liquidated at a loss, no collateral deterioration, no unsustainable liquidity crisis, no liabilities compounding beyond the Debtor's ability to manage them, and no concrete reduction in creditor recoveries. At most, the record shows temporary operating strain and short-term cash flow pressure. It does not demonstrate the type of

material erosion of estate value required to establish substantial diminution under Section 1112(b)(4)(A).

### b. The absence of a reasonable likelihood of rehabilitation

Equally important, "cause" under Section 1112(b)(4)(A) requires not merely an ongoing loss or diminution but, too, ". . . the absence of a reasonable likelihood of rehabilitation." *Id.* Courts have understood rehabilitation, in this context to mean the debtor's ability to restore the viability of its business. *Loop Corp.*, 379 F.3d at 516. The record does not support the proposition that the Debtor lacks such a likelihood.

The UST's argument rests principally on recent operating losses and its interpretation of the Debtor's initial plan obligations. That does not establish that the Debtor lacks a viable business or a realistic path to stability. As discussed above, the Debtor has continued to operate throughout this case, generate meaningful receipts, and maintain substantial liquidity. The recent negative months reflect discrete, identifiable disruptions—not a collapse of the Debtor's underlying business. This is not a debtor that has ceased operations or is merely liquidating while losses mount, but an operating trucking company working through temporary setbacks with a viable path forward.

Nor does the UST's focus on the Debtor's current cash position compel a different result. That argument conflates the question of rehabilitation with the timing and structure of plan payments. Chapter 11 contemplates that such issues are addressed through the confirmation process, not through conversion of an otherwise viable business. At most, the UST's position raises questions bearing on feasibility and the timing of plan performance; it does not establish that the Debtor lacks a functioning business or the ability to restore it to viability. On this record, there is

every reason to conclude that the Debtor has a reasonable likelihood of rehabilitation. The UST has shown, at most, a dispute over recent performance and the implementation of plan payments.

**IV.     Argument: Even if There Did Exist Cause, Unusual Circumstances Support Denial of the Motion**

Even assuming, *arguendo*, there did exist cause for conversion of this case, the UST has overlooked the provisions of Section 1112 dictating that such a result should not follow where "unusual circumstances" demonstrate that conversion or dismissal would not be in the best interest of creditors and the estate. This is a case where the Debtor's ongoing trucking operations can continue—thereby preserving going-concern value and allowing the Debtor to stabilize its performance for the benefit of all creditors—in Chapter 11, while liquidation in Chapter 7 would result in the forced sale of equipment and termination of operations, eliminating that value entirely. Such is assuredly the precise variety of "unusual circumstance" contemplated by Congress.

"Unusual circumstances" is an undefined term, *In re Miell*, 419 B.R. 357, 367 (Bankr. N.D. Iowa 2009), but "[c]ourts have significant discretion in determining whether unusual circumstances exist which weigh against conversion or dismissal," *id.* (citing *In re Prods. Int'l Co.*, 395 B.R. 101, 10 (Bankr. D. Ariz. 2008)). Or, as noted by this Honorable Court, ". . . the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 536-37 (Bankr. D.N.D. 2011) (quoting *In re Miel*, 419 B.R. at 367 (citing *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008), 7 Collier on Bankruptcy ¶ 1112.04[3], p. 1112-26 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2008))). The phrase thus

contemplates conditions that are not common in Chapter 11 cases. *Pittsfield Weaving Co.*, 393 B.R. at 274.

Here, the Debtor's recent operating results are not the product of a failing business, but of a series of discrete and extraordinary disruptions not typical in Chapter 11 cases, compounded by external market pressures beyond its control. Immediately following the petition date, the Debtor temporarily lost access to its factoring relationship and fuel program, materially constraining operations. In the months that followed, it experienced workforce interruptions due to illness, the unexpected death of a driver resulting in lost revenue and retrieval costs, and a one-time repair expense. At the same time, fuel costs—one of the Debtor's largest expenses—rose sharply to approximately $6 per gallon due to geopolitical disruptions, increasing operating expenses across the trucking industry and compressing margins, particularly given the Debtor's consumption of roughly 5,000 gallons in a single month.

These conditions reflect a temporary divergence between revenue and expense, not a structural weakness in the Debtor's business. As those conditions normalize, margins correspondingly improve. Notwithstanding these pressures, the Debtor has continued to operate, generate meaningful receipts, and maintain liquidity, and recent results reflect improving performance despite elevated costs—confirming that the business remains viable and capable of stabilization.

Immediate conversion is not in the best interests of creditors or the estate. The UST identifies potential Chapter 7 recovery only in speculative terms, suggesting that avoidance actions "may" exist, without identifying any concrete source of value. By contrast, the Debtor's liquidation analysis demonstrates that a Chapter 7 liquidation would yield no distribution to general unsecured creditors, while the Plan provides approximately $54,280.38 in aggregate distributions to Class 3

over its term. On this record, preserving the going-concern value of an operating carrier offers creditors a tangible and defined recovery, whereas conversion offers only the possibility of uncertain litigation proceeds. The choice is not close.

These are, in every meaningful sense, "unusual circumstances." The Debtor remains a viable, operating business, and the recent disruptions affecting its performance are temporary, identifiable, and non-recurring. Under these circumstances, the purposes of Chapter 11 are plainly better served by maintaining the case than by converting it. For that reason, even if cause were found, the Motion should be denied.

### V.    Conclusion

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Honorable Court (i) deny the United States Trustee's Motion to Convert; and (ii) afford such other and further relief.

Respectfully Submitted,

Dated: April 15, 2026                    By:    /s/ Christianna A. Cathcart
                                                Christianna A. Cathcart, Esq.
                                                The Dakota Bankruptcy Firm
                                                1630 1st Avenue N
                                                Suite B PMB 24
                                                Fargo, North Dakota 58102-4246
                                                Phone: (701) 970-2770
                                                christianna@dakotabankruptcy.com
                                                *Counsel for the Debtor*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of April, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

<u>/s/ Christianna A. Cathcart</u>
Christianna A. Cathcart